v. Ashcroft, if counsel are present. Okay. Petitioner. This is Garcia and Cortagana. Yes, that's correct. May it please the Court, my name is Leah McDermott from Angela Bean & Associates. I'm representing the petitioners Felipe Cortagana and Violeta Garcia. I'd like to reserve two minutes for rebuttal, please. Thank you. The two most important issues in this case are whether the immigration judge erred in finding that the petitioners in this case had not established a well-founded fear of future persecution, and also whether the petitioners' request for a stay of the voluntary departure period should be granted. I'd like to begin with the voluntary departure issue. This issue is particularly critical in this case, because if this Court decides to apply Zazueta-Carrillo to these petitioners, they will be barred from reentering the country for 10 years. And this would cause extreme hardship to these clients, because they have a visa petition filed by their U.S. citizen son that they will be able to – which will allow them to reenter the country legally from Peru. Now, if this Court retroactively applies Zazueta-Carrillo to these clients, they will be barred. And at their age, they're 67 years old, and this could mean that they may never be reunited with their families. Would that be a retroactive application? Well, at the time that the petition for review was filed and the briefing was completed, the rule in the circuit was contrarios aragon, which states, as you know, that the voluntary departure period begins to run when this Court issues its mandate. So in this case, we advise petitioners that they did not need to file a stay of the voluntary departure period, because the period would not begin to run until after this Court issued its decision. Has the issue been put before the BIA? No, it has not, Your Honor, because it was not then an issue. Again, the voluntary – there was never – Has it since – has it been put before the BIA at all? In this particular case or in any case? In this case. No, it has not. The voluntary departure period – there was never an issue of removal ordered, because as far as the board was concerned and as far as the government was concerned, it had not yet begun to run. Right. But don't you think you have to exhaust that administratively before we can deal with that? In other words, don't you have to present that to the BIA? Well, certainly, if this Court would like to remand on that issue. But at the time that this case was before the board, there was nothing to consider. There's a thing called a motion to reopen? That's true, Your Honor. But at the time, we had requested that this panel clarify the effect of Zazuera-Carrillo on this particular case. There is still a thing called a motion to reopen, correct? Yes, I agree. Now, would the time bar apply to that or do you know in this case? I'm sorry? Would you be time barred from a motion to reopen or do you know? At this point, I believe we would be, yes. And again, we, because the law did not change until approximately three months after we finished the briefing in this case, finished our reply brief. No, I understand your point. I think we're just trying to work our way through the administrative exhaustion requirement and how it applies here. The case itself was applied retroactively, wasn't it? Which case? The case that decided the question that applied to that person. No, actually, in Zazuera-Carrillo, this Court did not apply, did not apply the rule they were announcing to those Petitioners. Rather, it recognized the fact that those Petitioners could not have known that this law was going to change in that way, and it remanded to the Board to consider whether it could. Because they had made a motion to reopen. They had made a motion to reopen to the Board, and we remanded. And we said, well, the Board didn't understand that we had made this decision and we sent it back. But they had made a motion to reopen to the Board. Okay. Well, in this case, there was never that opportunity to file a motion to reopen because the time period had already run to file a motion to reopen, and that's it. Was the INS asked to agree? I'm sorry? Was the INS asked to agree? Because you can file a motion to reopen if the INS agrees, right? The INS was asked to agree to a motion to reopen, but not on that basis. It was asked to agree to a motion to reopen on the basis that he was eligible to adjust his status from the visa petition filed by his son. But the voluntary departure issue was not the reason, was not the basis for that motion to reopen, because at that point it had not run and it wasn't considered a bar. Moving on to the asylum issue, the immigration judge in this case held that the threats against Mr. Cortogano did not constitute past persecution and that there was no objective basis for the well-founded fear of future persecution. The objective basis for a well-founded fear of persecution can be shown either  by a reasonable fear of persecution, which is what this Court found in Lim, or that the Petitioner suffered past persecution, and that would then give rise to a rebuttable presumption of future persecution. In this case, the Petitioners have provided credible, direct, and specific evidence of Mr. Cortogano's fear. He presented evidence of the direct threats against him when he was working as an ambulance driver, and that he was engaged in close confrontations with masked men who came and asked him to explain what routes he would be taking when transporting Shining Path members who had been injured. Was he ever harmed physically? He was not. No, he was confronted directly. And when he ceased being an ambulance driver, did the threats cease? As far as I know, they did cease. However, he was also hiding. He took his entire family to his mother's house, and he was actually out of the country for a large part of that time. That satisfies perhaps the subjective component. But objectively, what reason do we have, based on the record, to believe that he would be threatened if he returned? Well, in Lim, this Court held that there only need to show one-tenth of the evidence I understand that, but I'm just saying what's in the record that will get us to even a tenth. Okay. Well, in the record, he was transporting Shining Path prisoners. And again, as I said, he was threatened because he refused to assist Shining Path in helping free those prisoners. Now, there have been several incidents that he was involved with, and in the press, and there was documents submitted to this effect, that Shining Path members were willing to use lethal force and regularly did use lethal force to free their prisoners. What's the best statement in the record, the transcript of his hearing? What's the best statement that demonstrates he was persecuted? The best statement that he was persecuted? Okay. Where's the best thing? I've read it and reread it, and he keeps talking about, well, they said they wanted they asked me for information. I told them I didn't know anything. Where do they say, and now we're going to shoot you down, or now we're going to get you, or you dirty dog, you're not giving us information, we're going to get you? Where's the best place in the record that shows that? I think it's more an issue of the record as a whole, which indicates it's not one piece of evidence. Tell me anything in the record where they said they are going to harm him. Or just point me to it. There's a specific quote where he says that, where he was threatened and it says, watch out for your children. He also says, at 115, in the record, he states, I was really afraid that they might kill me and I was afraid of losing my wife. Well, you said he was afraid, but I'm not asking you that question. At 106, he explains that they dropped a bomb and that the purpose was to rescue some of the guerrilla fighters. Excuse me? 106, did you say? Yes. They killed, they attacked a jail and they took, and there was some patient on the floor that they came to get. Okay? Where's the threat against him? Where's the what? Where's the threat to him? It's not on 106. Yeah, I realize that. Let me. You wanted to save some time for rebuttal. Maybe you could pick up these page references while you're down. Okay. Certainly, Your Honor. You can come up and respond to Judge Fernandez's question. Thank you. That would be great. Thank you for your argument. Ms. Lightfoot? I keep saying Lightfoot because I have a good friend named Lightfoot. It's Lightbody. I apologize again. Welcome back. Thank you, Your Honor. May it please the Court. My name is Jennifer Lightbody on behalf of the Respondent. The record evidence in this case does not compel the conclusion that the Petitioner is entitled to a grant of asylum or withholding of removal, where Petitioner, a former ambulance driver, sought asylum based on alleged threats that ceased when he no longer worked as an ambulance driver. And before I get into my argument, Your Honor, the government did not brief the voluntary departure issue. I'm prepared to discuss that today. But out of fairness to opposing counsel, we have not briefed that. And if the Court would like me to, I'd be happy to. You heard our discussion about the administrative exhaustion issues. What's your reaction to that? Well, our position would be that there is nothing in the record that suggests that they went to the district director and asked for an extension of voluntary departure. And the regulations specifically state that they can seek that only from the district director, and in this case they didn't do that. They didn't seek to reopen, even a late reopening. So that issue would not be properly before the Court. In addition... Would you object to a remand so that the VA could consider it? We would object, and we would oppose the voluntary departure or an extension of voluntary departure based on this Court's recent decision in Zazawada-Cario. And in that case, the Court specifically said that after Herrera, there was no reason to believe that the voluntary departure period begins after the Court issues its mandate. So the petitioner's reliance on that, they relied on Contreras-Aragon to their peril. And, in fact, the Court had stated in Zazawada that the petitioner's reliance on Contreras-Aragon cost him dearly. And in this case, there was no reason for a petitioner to believe that the voluntary departure period would be extended once Herrera was passed. Except that their attorneys told them. And so then you're in the conundrum later because you get a motion to reopen on that question, too. So, I mean, it seems to me, and I haven't really formulated my thinking on this, but what a remand would do, it allows the BIA to apply any of those theories you just described, but at least take a look at it before we see it again in some other form. The government's position would be that a motion to reopen would be time-barred in any event, but certainly. Well, if they go there and the BIA says it's time-barred, then they can appeal it to us and say, look, that's an unreasonable application of it, correct? That's unreasonable for the BIA to call it time-barred when it came up late. We could see it back that way, right? But the petitioners also haven't suggested why the Court should delay or somehow not make a finding that the holding in Zazawada should be delayed for some reason, meaning that it shouldn't apply to these petitioners. And, indeed, the government's position would be that this Court doesn't have or should not allow this or extend the voluntary departure period as a matter of equity because the petitioners come to this Court with unclean hands in this Court. How so? Well, they failed to – well, in the El Hemry case, they had applied for an extension of the voluntary departure period while that period was still pending. So, in other words, by the time they had sought the extension in this Court, that 30 days that the Board had given them to voluntarily depart had not expired. And so they acted with diligence in coming to this Court and saying, could you extend our voluntary departure period because that period hadn't run. In this case, the period had run. I guess I understand your diligence argument. I'm not sure why it's a clean hands argument. Usually when I hear clean hands, I hear that somebody's done something sneaky, they've done something underhanded, they've committed some wrong. And I don't see that here. Maybe I misinterpreted your argument. You're just arguing diligence, right? It's the lack of diligence and the position that they are not then entitled to an equitable relief with respect to voluntary departure. I'd also point out that in their motion to this Court, unlike in El Hemry, they haven't stated that they satisfied the requirements for a stay. They haven't shown a probability of success on the merits and the possibility of irreparable harm, or that there are serious legal questions in the balance of hardships tips in their favor. So they haven't given this Court any reason to extend the voluntary departure period. Do you by any chance, I realize it's not part of the record, but do you have any idea what the BIA has been doing as a practical matter now that we have our new rule, or not our new rule, now that we've declared what the law has always been? I don't know, Your Honor. I simply don't know the answer to that. It appears to me, I mean, that the BIA is acting, interpreting the rule differently from what we've said, based on some cases I've seen. In other words, they're treating the voluntary departure period as told during that period. In other words, I don't think they've applied our rule, it appears to me. I'm sorry, I'm not clear. I think the BIA has taken a position contrary to what we did in Zuada, Correo, and as recently as, you know, within the last year. I don't have a specific case. If there was a case, I could try to address that for you, but I'm not aware of that. If the government, or I'm sorry, if the court would like the government to submit some kind of response to this, I'd be happy to do so, and I can certainly do that. I think we all suspect we may see this again. Okay. With respect to the asylum claim, Your Honor, it's the government's position that the petitioner has not shown that this constitutes past persecution and that petitioners don't have a well-founded fear of future persecution. Judge Fernandez, you had asked in the record where it had indicated that the petitioner had been threatened, and it's the government's contention that's on page 109 of the record. And petitioner said, sometimes in passing they would tell me they would ask me for favors. They would tell me, watch out for your children. However, he didn't know who these individuals were. Counsel this morning has indicated it was the Shining Path, but I would submit the record doesn't indicate that it's the Shining Path. The record indicates that he said, and I believe this is at page 109 again of the record, that they were just some bad people. So it wasn't clear who, in fact, was allegedly making these threats. But, I mean, the country reports, if you look at those, would not indicate there are any other groups out there other than the Shining Path that were likely to be that well organized in freeing Shining Path prisoners. But it's not clear that there was some other motive for them wanting to know the routes of the ambulance and if it was indeed this group. They were dressed in civilian clothes. What's the best alternative hypothesis if they want to know when you're transporting Shining Path prisoners? Do you have an alternate explanation? I don't think there's any that is in the record, Your Honor. But he also didn't, the record shows that he didn't know who they were. Yeah, but you rarely do. You usually say, I'm so-and-so, I'm from the Shining Path, and I'm here to terrorize you. Correct. They don't comply with our requirements. And the reason I'm telling you this is so you can bring it up in your asylum petition later when you leave the country out of fear of me. And that just doesn't happen. But I don't mean to be facetious about it, but is there an alternative explanation that you have? I don't have one on hand. The government would submit that the petitioner has not shown a well-founded fear of future persecution because once he ceased being an ambulance driver, the threats ceased. And, in fact, he was an ambulance driver between 1975 and 1989, and he didn't receive any threats after 1989. Now, the petitioner indicates that a large part of the time he was hiding out or was in the United States. The record indicates that between 1987 and 1994, that seven-year period, he was in the United States for approximately two years, and it would be the government's position that that was not a large part of the time that he was in the United States. The threats that he received do not amount to an objective fear of persecution. Again, they ceased when the petitioner stopped driving an ambulance, and he had another occupation, which was driving a taxi, and he didn't receive any of these threats. They were related specifically to what he was doing and what information he was able to give to these groups. In sum, we would ask that the Court affirm the Board's decision. Thank you. Thank you for your argument, rebuttal. Ms. McDermott. I would agree. It is the certified record at 109 where that threat was made. With regard to the voluntary departure period, the government argues that these petitioners were not diligent, but, again, they had no way of knowing that the law was going to change. The voluntary departure period had not run when they filed their petition for review, so there was they could not have asked for an extension. There was no reason to, and there was no order of removal outstanding against them. And so it wouldn't have made sense for them to file either a stay for removal or a stay of the voluntary departure period. It wasn't until this Court announced in El Hemry the requirements that it became clear what was needed for petitioners to do. And, in fact, these petitioners have satisfied those requirements. They have raised serious legal questions, as outlined in their briefs. And, again, there is clearly hardship here. They have one U.S. citizen son, two lawful permanent resident daughters, five U.S. citizen children, grandchildren, and they're facing a 10-year bar from reentering and being reunited with their family if the stay of the voluntary departure period is not granted. As a practical matter, in other cases that we've had before this Court, this Court has granted stays of the voluntary departure period non pro tonque in cases such as this one where the law, where the law at the time that the petition for review was filed was contrarios aragon. Your time has expired. Thank you for your argument, counsel. Thank both counsel for their arguments. The case just argued will be submitted for decision. We'll proceed to the next case on the argument calendar, which is United States Pickard et al. Counsel present? Yes, Your Honor. Okay.
judges: Fernandez, Hawkins, Thomas